ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 4 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| TAWANA L. BENNETT, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Case No. 304 CV 1281-B** |
| | § | **JURY DEMANDED** |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, d/b/a CIGNA | § | |
| GROUP INSURANCE and | § | |
| PATTI HOLT, | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION IN RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Tawana L. Bennett, ("Bennett" or "Plaintiff") in the above numbered and titled action, and submits this, her Motion in Response to Defendants' Motion for Summary Judgment, and will show this Honorable Court as follows:

## I.

### SUMMARY OF RESPONSE

Defendants are not entitled to summary judgment on the following claims as genuine issues of material fact have been demonstrated through the evidence produced by the Defendants: Plaintiff is entitled to maintain her action against CIGNA Life Insurance Company, as the designated Claims Administrator and Agent for Service of Legal Process; and that Defendants, acting in their capacity as Claims Administrator abused their discretion in denying Plaintiff's claim for long-term disability.

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 1**

## II.

## BASIS FOR OPPOSITION TO MOTION

The factual and legal grounds on which the Plaintiff bases her Response to the Defendants' Motion is set forth in Plaintiff's Brief in Support (the "Brief") of Plaintiff's Response to Defendants' Summary Judgment.  Each of the required matters under the Local Rules for the Northern District of Texas will be set forth in Plaintiff's Brief.

Plaintiff opposed Defendants' Motion and will show this Court as follows through the summary judgment evidence:

## III.

## INTRODUCTION AND OBJECTIONS TO DEFENDANTS' MOTION

Defendants' motion for summary judgment is defective because it contains legal argument and authorities in the Motion by combining the motion and the brief into one document in violation of Local Rule 56.3(d), which states:  "A motion for summary judgment must not contain legal argument."  Local Rule 56.5(a) states:

> **Brief Required.**  A summary judgment motion and a response must be accompanied by a brief that sets forth the argument and authorities on which the party relies in support of or opposition to a motion, and must contain the matters required by LR 56.3(a) or LR 56.4(a) if the party has opted to comply with those rules by including the required matters in its brief.  Notwithstanding LR 5.1(c), the brief must be filed as a separate document from the motion or response that it supports.

Because Defendants failed to set forth in its motion or brief the factual basis upon which it seeks summary judgment, included arguments and authorities in its motion, and did not cite any authority for its failure to comply with the rules cited above, Defendants' Motion for Summary Judgment should be stricken and/or denied.

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 2**

Plaintiff objects to Defendants' Motion for Summary Judgment on the basis that it is premised on a series of factual conclusions, very often without reference to the record.

Plaintiff further objects to Defendants' Appendix of Evidence in that the documents and information requested by the Plaintiff in a Request for Production of Documents and a Set of Interrogatories, which was served with the citation of this case on June 3, 2004, was never provided by Defendants. *Plaintiff's Appendix of Evidence, attached hereto and incorporated herein for all purposes, hereinafter "PAE" at 0112-0113.* Finally, Plaintiff objects to the affidavit of Richard Lodi, attached at Defendants' Appendix of Evidence (hereinafter "DAE") at pages 1-4, to the extent that he does not have personal firsthand knowledge of Plaintiff's claims as there is no evidence to demonstrate he was involved in receiving, analyzing, and rendering a decision on Plaintiff's claim for Long-term Disability (hereinafter "LTD").  His position with the company would indicate that his level is above that of a claims administrator.

## IV.

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Plaintiff will respond to the Statement of Facts presented by Defendants, though called "Factual Background," as follows, using the paragraph numbering system set forth by Defendants:

**A.**     **Response to:   The Parties, the ERISA Plan, and the Disability Insurance Policy**

1.      Plaintiff has no basis upon which to dispute or not dispute any of the statements made in the first sentence of Defendants' paragraph one, as Plaintiff has no independent knowledge of the business relationship between the parties.  Plaintiff does not dispute the rest of paragraph one in that she was employed with Solomon Smith

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 3**

Barney ("SSB") as a customer service representative during 2003 and enrolled in a LTD policy number NYK 2260.

2.      Plaintiff does not dispute that her annual income was less than $50,001, and that the *policy*, as opposed to the Summary Plan Description, hereinafter "SPD") classifies persons at that income level as "Class 1" employees.  Plaintiff does not dispute the rest of paragraph two and the representations made as to what the *policy* states. Plaintiff does dispute that the *policy* definition of "totally disabled" is the controlling definition as the SPD definition of "totally disabled" is different. *DAE at 8.*

3.      Plaintiff disputes the definition of "totally disabled" as presented by Defendants, which is from the Certificate of Insurance. *DAE at 43.*  The definition of "totally disabled" in the SPD is without the word "all" and is as follows:

> Disabled or Disability means that, due to sickness, pregnancy, or accidental injury, you are:
>
> - receiving appropriate care and treatment from a doctor on a continuing basis; and
> - medically unable to perform the essential duties of your own occupation for any employer because of a physical or mental impairment.
>
> You are not considered to have a disability if your illness, injury, or pregnancy only prevents you from commuting to and from work.
>
> **Effective January 1, 2004:**  Total Disability means that due to a serious health condition, pregnancy, or injury, you are unable to perform the essential duties of your regular occupation for more than seven consecutive calendar days.
>
> You are not considered to have a disability if your illness, injury, or pregnancy only prevents you from commuting to and from work.
>
> The elimination period is seven calendar days.  Beginning the day after you satisfy the elimination period, salary continuation, if eligible and approved, will commence retroactive to your first scheduled work day.  To

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 4**

qualify, you must be receiving appropriate care from a licensed health care provider on a continuing basis.

*DAE at 8. (Bold in original.)*

Plaintiff further disputes the second part of paragraph 3 in that the SPD does not include the post-24 month LTD requirement. Plaintiff further disputes the relevance of this definition in her case.

### B.   Response to:   The ERISA Claims Procedure Under the ERISA Plan and the Policy

4.     Plaintiff disputes that DAE at 17 states that CLINY is the claims administrator for the Citigroup, Inc. ERISA Plan for employees of SSB. *See DAE at 17.* This page mentions a "Claims Administrator," but does not name one. CLINY is listed as the Claims Administrator on page 15 of the SPD. *DAE at 19.* Plaintiff does not dispute that the SPD states that the ERISA Plan is comprised of the SPD and the Policy. *DAE at 7.*

5.     Plaintiff has no independent basis, other than the aforementioned and objected to, affidavit of Richard Lodi, to dispute or not dispute the contents of paragraph 5.

6.     Plaintiff disputes the first sentence of paragraph 6, as neither CLINY nor LINA are mentioned by name on the identified pages 7 and 17 of DAE. The only companies named are Citigroup and MetLife. *DAE at 7.* Plaintiff disputes that the language quoted in the second sentence is completely accurate. The sentence actually reads: "The Claims Administrator*s* shall have the authority, in *their* discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage of benefits

under the Plan, and to make any related findings of fact." *DAE at 7*. Plaintiff does not dispute the remainder of paragraph 6.

**C.** **Response to: Plaintiff's ERISA Disability Benefits Claim**

7. Plaintiff disputes the incompleteness of the first sentence of paragraph 7. Plaintiff does not dispute that on May 27, 2003, (which may not be "early 2003") she submitted her Disability Questionnaire & Activities of Daily Living form and stated in answer to question 1 that: "I am unable to sit-up for more than one hour, I have severe back pain, dizziness and fatigue, sometimes cannot walk because of the pain in my legs." *DAE at 330*. Plaintiff stated in answer to question 2: "Back pain, dizziness, pain in my legs, arms, hands, sometimes pain all over my body, problem with memory." *DAE at 330*.

8. Plaintiff does not dispute any of the facts as stated in paragraph 8.

9. Plaintiff does not dispute that she applied for Social Security Disability benefits on December 5, 2002. *PAE at 0007*. Plaintiff was initially denied such benefits. *PAE at 0007*. Plaintiff disputes Defendants' contention that: "At the time of its claim decision, LINA had not received any information that the Social Security Administration had reversed or reconsidered its decision." This is not true, as Defendants' had documentation alerting them to the fact that Plaintiff had appealed the SSA's decision and was awaiting that reconsideration in a letter dated June 15, 2003, from Kraft & Associates, Plaintiff's counsel for the SSD benefits issue, which stated: "We did our client's appeal for SSA benefits 4/27/03 and currently waiting [sic] for a decision." *DAE at 239*. Attached to this letter were seven additional pages constituting the Reconsideration Forms Plaintiff and her counsel submitted to the SSA for

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 6**

reconsideration. *DAE at 240-246.* Further, Plaintiff told Michelle Delgrosso directly that she was filing for reconsideration as reported in a computer entry dated April 15, 2003. *DAE at 292.*

10.    Plaintiff does not dispute that in some correspondence with Defendants, Defendants attempted to place the responsibility for investigating Plaintiff's disability claim on Plaintiff. *DAE at 76, 80, 115, 126.* However, Plaintiff disputes that this is what the policy stated, which said: "The Claims Administrators shall have the authority…to make any related findings of fact." *DAE at 7.* The "CIGNA Disability Management Solutions Frequently Asked Questions for Claimants" document states: **"Who contacts my doctor?  Do I need to call my doctor?** During the first three to five business days after we receive your claim, your case manager will attempt to reach your doctor to obtain medical information." *DAE at 326.* Plaintiff received correspondence that CIGNA was the party that would complete the investigation, such as the letter dated May 30, 2003, from CIGNA stating: "we requested additional information from Dr. Williams and Dr. Chatum [sic]…" *DAE at 255, 273.* A similar letter dated April 11, 2003, stated: "We are also requesting additional medical information from your attending physician(s)." *DAE at 293.* In addition, Plaintiff was asked to, and did, complete a medical authorization form so that *CIGNA* could obtain her medical records. *DAE at 271, 128-132, 322.* Plaintiff also completed a "Consent for Release of Information" form for Dr. Williams authorizing her medical records to be released to CIGNA, which is dated May 8, 2003. *DAE at 232, 261, 264.* Defendants used this at least once to obtain medical information. *DAE at 195-196.* A detailed computer entry dated April 15, 2003,

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 7**

by Michelle Delgrosso, who is labeled "Responsible" on the form, to Priscilla Garriga, indicates that CIGNA was gathering documents for the investigation. *DAE at 229.*

Further, one document cited by Defendant in its paragraph 10 poses the handwritten question: "Does she have any other information to submit?" *DAE at 127.* Likewise, another document cited by Defendant in this paragraph states: "Please include any documentation which you feel supports your claim." *DAE at 146.* A letter to Plaintiff from Michelle Delgrosso states: "The Appeals Claims Examiner there will contact you if they need additional information *from you.*" *DAE at 136. (Emphasis added.)* Plaintiff disputes that these documents or statements indicate it was her responsibility under the terms of the policy or the SPD to conduct the investigation into her claim. Plaintiff disputes further Defendants' contention that "a very limited amount of medical information was submitted in support of Plaintiff's claim, despite the ERISA administrator's repeated efforts to obtain as much information as possible" to the extent Defendants are asserting this is Plaintiff's fault. Plaintiff disputes the next sentence to the extent Defendants are asserting it is her fault that they had to make so many attempts to obtain information from her doctors. Plaintiff did not count the number of pages of medical records provided. Plaintiff notes that there are no records indicating that Defendants' interviewed Plaintiff's doctors or asked them to provide information as to restrictions and limitations.

11.    Plaintiff does not dispute any of the facts as stated in paragraph 11.

12.    Plaintiff vehemently disputes the contention in the first sentence of paragraph 12, which is: "No medical evidence or records were submitted to substantiate Plaintiff's claim that she suffered from systemic lupus, 'erythematosis' or hypertension,

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 8**

or that such affliction somehow rendered her unable to perform her sedentary work duties." This is simply not true. Records and reports of Plaintiff's diagnoses and health complaints were at all times presented to, and known by, Defendants. Plaintiff was interviewed *via* telephone by Linda Bafaro on November 4, 2002, wherein she told Ms. Bafaro of her lupus diagnosis. *DAE at 72.* The LTD Appeal Review by Brenda Bartlett on January 23, 2004, noted: "Health conditions are chronic and long standing for several years, during which she worked...Dr. Williams...dxs dizziness of uncertain etiology...similar complaints for years...some notes rec'd after denial, also reflect cx's complaints, now dxd with fibromyalgia." *DAE at 72.* An entry by K. Johnson on January 22, 2004, notes: "After denial, a Dr. Williams said he supported her wish for ltd. Specializes in otolaryngology and dxs dizziness of uncertain etiology. No medical to support. She's had similar complaints for several years. Some notes rec'd after denial, also reflect cx's complaints, now dxd with fibromyalgia." *DAE at 73.* An entry by "JG" on July 18, 2003, states: "DX lupus. Raynauds sjorgrens syndrome, and vertigo....With appeal we got a letter from one of her doctors, and he said he would support her wish for LTD, but he provided no medical to support her inability to work..." *DAE at 120.* The full text of Dr. Williams' letter of June 24, 2003 is:

> Dear Ms. Del Grosso:
>
> This letter is being written support [sic] of the above-mentioned patient who I have seen and evaluated for dizziness of uncertain etiology. Her testing and evaluations have pointed toward a central nervous system disease and not peripheral end-organ disease as the etiology for her balance complaint. ***The patient is not able to work or drive consistently or sit for long periods of time without getting extremely vertiginous.*** She certainly is not having nausea or vomiting on a regular basis.

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 9**

Prognostically, I cannot predict how this problem will play out other than **because of her underlying collagen vascular disease, _lupus_, she may have issues with dizziness indefinitely.**

I have no further recommendations from an otolaryngological standpoint and would support her wish for long-term disability.

Sincerely,


JR Williams, II, MD, FACS

*DAE at 139.  (Emphasis added.)*

A computer entry by Michelle Delgrosso on June 19, 2003, notes that "Cx has had multiple conditions for a number of years, at least 9 years **per AP [attending physician] reports**, and has continued to work."  *DAE at 148.  (Emphasis added.)*  A computer entry by Lisa Scoton on June 18, 2003, notes the various diagnoses Plaintiff has, the limitations she has, the pain she has, and the medications she is on. *DAE at 149.*  As proof that Plaintiff has been diagnosed with the conditions she has claimed, that Defendants state there are no medical records to support, see the Progress Notes dated March 14, 2003, from Dr. Cheatum which states that Plaintiff has "**SLE [a/k/a lupus**, *see PAE at 0021*] with Sjogren's syndrome, Raynaud's, antiphospholipid antibodies of the lgG type, photosensitivity, alopecia, arthralgia, migraines, fatigue and some esophageal reflux. She had been having morning stiffness all day long, but currently she is limbering up by noon.  She is especially tender in the left hip and in the left lower back." *DAE at 150.*  The same Progress Notes state:  "The shoulders, elbows, hands and wrists are mildly tender...She is very tender in the left trochanteric bursa and the left lower back...The knees, ankles and feet have mild tenderness..." *DAE at 150.*  Progress Notes from Dr. Cheatum dated January 14, 2003, list the same diagnoses and that "She is

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 10**

having a lot of fatigue and morning stiffness persistent throughout the day. She is tender in the left hip and upper back especially." *DAE at 152.* The Progress Notes of this date state further: "Hands and wrists are a bit tender. Upper back is tender...She has some tenderness of the left hip...She had had workup for headaches and dizziness at the Medical School and they thought it was probably due to *lupus*..." *DAE at 152.* Progress Notes from Dr. Ogunro dated February 19, 2003, state: "The patient indicated that Daypro hasn't helped her much. She is still having pain with proximal migration in the right hand." *DAE at 154.* Progress Notes from Dr. Ogunro dated January 29, 2003, state: "The patient presented to the office today with chief complaint of numbness and tingling of the right hand, in addition to pain...she feels that she is losing strength in both hands, especially noticeable whenever she is driving....*Positive for lupus which was diagnosed approximately nine years ago.*" *DAE at 155. (Emphasis added.)* The "Clinical Impression" in these same notes was: "(2) *lupus*." *DAE at 156. (Emphasis added.)* Dr. Iqbal stated in a letter dated June 18, 2003, that "Patient has history of *SLE [a/k/a lupus, see PAE at 0021]*, weakness, fatigue, numbness and tingling in her extremities and vertigo *which are keeping her from work.*" *DAE at 161. (Emphasis added.)* Further, Dr. Iqbal stated: *"Patient in her current condition is unable to work."* *DAE at 161. (Emphasis added.)* In Dr. Iqbal's "New Patient Consultation" form dated June 18, 2003, he notes:

> According to the patient in 1994 she was diagnosed as having *lupus* by Dr. O'Neill...having arthritis, rash on her face, painful sores in her mouth and hair loss...Patient has been having dizziness since 1995 *which has gotten worse since November of last year [2002]*...She describes the dizziness as a vertigo which occurs off-and-on which can occur *while she is sitting or walking*. Patient has been on disability *since her symptoms progress[ed]*...She has difficulty walking as she has to support herself.

> She also feels weakness in her arms and legs....numbness and tingling in
> the extremities.

*DAE at 162. (Emphasis added.)*

In Progress Notes from Dr. Iqbal dated July 30, 2003, he notes as the Chief Complaint, "followup [sic] of **SLE *[a/k/a lupus, See PAE at 0021]*.**" *DAE at 164. (Emphasis added.)* The same notes list among her many medications, methotrexata, which is used to treat lupus. *DAE at 164; PAE at 0029.* The notes also mention: "According to the patient she cannot sit for more than half an hour because she develops pain in her lower extremities and she has dizziness." *DAE at 164.* Progress Notes from Dr. Williams dated March 25, 2003, note as Plaintiff's underlying illness, ***lupus***. *DAE at 174.* These Progress Notes also indicate that Plaintiff underwent an MRI and vestibular studies for her recurrent vertigo and that certain treatment would be helpful, but her insurance would not pay for it. *DAE at 174.* Progress Notes from Dr. Williams dated December 31, 2002, indicate that there were indications of "central nervous system pathology" and that in answer to Plaintiff's question as to whether her lupus might be causing her dizziness, Dr. Williams stated, "it possibly is involved, but there is no specific labeling required." *DAE at 175.* Progress Notes from Dr. Williams dated December 11, 2002, state: "She was diagnosed with lupus back in 1994" and that her "chief complaint" was "dizziness over several years." *DAE at 176.* Dr. Williams' impression on this date was: "she has dizziness of uncertain etiology." *DAE at 177.* The Electronystagmogram Results Form dated December 31, 2002, state as the impression: "The presence of vertical nystagmous indicate central nervous system pathology." *DAE at 178.* Notes from Dr. Kakarla dated May 7, 2003, note dizziness, chest pain, vertigo and ***lupus***. *DAE at 197, 217.*

A computer entry by Michelle Delgrosso dated June 11, 2003, reports a call to Plaintiff questioning her about who advised her to stop working. *DAE at 213.* Plaintiff reported that Drs. Williams and Cheatum did. *DAE at 213.* Delgrosso told Plaintiff that nothing in the notes reported that. *DAE at 213.* No records reflect that Delgrosso or anyone else called either doctor to confirm Plaintiff's report.

Two computer entries dated April 15, 2003, by Michelle Delgrosso notes that the claimant's symptoms are: "due to initial dx of *lupus*...which dates back to 1994. ***Flare of condition began to occur in approx 12/02.***" *DAE at 277. (Emphasis added.)* The second entry is similar in regard to the lupus report, but adds:

> Cx states that conditions affecting part of her brain causing dizziness, pain has increased greater than normal in legs, and continues with chest pain...Cx states that she is not able to drive due to her dizziness, also, she is not able to walk at times...Cx states that she is not able to sit for extended periods. She states that she can sit for approx 1-2hrs then needs to lie down for a while before she can sit back up...Cx stated that rtw [return to work] has not been discussed primarily because her condition has not improved, normally, following a flare-up she bounces back quickly, however not this time.

*DAE at 291. (Certain misspellings corrected without notation.)*

The "STD to LTD Referral Form" has as the diagnosis *lupus*. *DAE at 302.* The CIGNA Group Insurance Master Summary Report states that the description of Plaintiff's condition is *lupus*. *DAE at 316.* Finally, Plaintiff self-reported her symptoms in her responses to the "Disability Questionnaire & Activities of Daily Living" form. *DAE at 329-332.*

Plaintiff disputes the last contention in paragraph 12 where Defendants state that there was no medical data providing a specific medical diagnosis corresponding to Plaintiff's subjective complaints of pain and dizziness. Progress Notes from Dr.

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 13**

Williams dated December 31, 2002, indicate that there were indications of "central nervous system pathology" and that in answer to Plaintiff's question as to whether her lupus might be causing her dizziness, Dr. Williams stated, "it possibly is involved, but there is no specific labeling required." *DAE at 175.* The Electronystagmogram Results Form dated December 31, 2002, state as the impression: "The presence of vertical nystagmous indicate central nervous system pathology." *DAE at 178.* Dr. Williams' letter of June 24, 2003, stated: "Her testing and evaluations have pointed toward a central nervous system disease and not peripheral end-organ disease as the etiology for her balance complaint." *DAE at 139.* Plaintiff disputes any contention that an etiology or objective medical data is required to support her claim as nothing like that is contained in the SPD or policy.

13.     Plaintiff disputes the contention that there was no evidence submitted to support that Plaintiff could not work. Dr. Williams' letter of June 24, 2003, stated: ***The patient is not able to work or drive consistently or sit for long periods of time without getting extremely vertiginous."*** *DAE 139. (Emphasis added.)* Further, the record is devoid of any proof that Defendants called or otherwise submitted an inquiry on this point to Plaintiff's doctors, though they had authorization from Plaintiff to do so. Plaintiff does not dispute that the record demonstrates that she has had lupus for approximately 9 years. Lupus symptoms come and go and may become severe. *PAE at 0107.* Lupus can progress rapidly and "[f]lares and remissions can occur abruptly, unexpectedly, and without clear cause." *PAE at 0109.*

14.     Plaintiff does not dispute that she told Defendants that her condition might be caused by stress at work, had affected her brain, and her OB/GYN informed her

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 14**

that her lupus had affected her hormones. Plaintiff disputes that there are no neurological findings or data to support these statements. Progress Notes from Dr. Williams dated March 25, 2003, indicate that Plaintiff underwent an MRI and "vestibular studies." *PAE at 174*. Progress Notes from Dr. Williams dated December 31, 2002, indicate that there were indications of "central nervous system pathology" and that in answer to Plaintiff's question as to whether her lupus might be causing her dizziness, Dr. Williams stated, "it possibly is involved, but there is no specific labeling required." *DAE at 175*. The Electronystagmogram Results Form dated December 31, 2002, state as the impression: "The presence of vertical nystagmous indicate central nervous system pathology." *DAE at 178*. Dr. Williams' letter of June 24, 2003, stated: "Her testing and evaluations have pointed toward a central nervous system disease and not peripheral end-organ disease as the etiology for her balance complaint." *DAE at 139*. Plaintiff disputes any contention that an etiology or objective medical data is required to support her claim as nothing like that is contained in the SPD or policy. Plaintiff notes that Defendants did not request data from Plaintiff's OB/GYN, though Plaintiff signed a medical release form. Plaintiff notes that Defendants did not inquire as to who her OB/GYN is. Plaintiff notes that "data" about lupus can be found in many places, including the Internet. *PAE at 0021-0033, 0107-0111*. Plaintiff does not dispute that she had similar complaints of dizziness and pain. Plaintiff disputes the statement by Defendants that: "after acknowledging that only a treating physician could substantial her claim of disability, did in fact return to work." For this contention, Defendants cite *DAE at 72*. However, no such statements appear at that page, the following is the full computer entry dated November 4, 2002, entered by Linda Bafaro:

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 15**

Called Cx – she was out of work due to complications from pre-existing Lupus condition.  LDW was actually 10/18/02 – she was on vacation the week of 10/18 but did not actually see the AP – her first visit to AP was on 10/28 for the Lupus condition.  She rtw on 11/4/02.  I informed her I would get medial backup from Dr. Cheatum but that her disability would begin on 10/28 as she did not see the AP until this date.  She said she had a pre-existing condition and does not always see the doctor since he knows her case.  I informed her that she would have to see AP to disable her from working as well as treating her.  She understands.  Since Cx has rtw on 11/4, benefits can be approved and claim closed.

*DAE at 72.*

Plaintiff objects to the gross mischaracterization of Defendants contention regarding the above paragraph.  Plaintiff notes that by the time Plaintiff was called, she had already returned to work.  Plaintiff notes that the benefits were approved and the claim closed.  Plaintiff notes that there was nothing about Plaintiff returning to work because her doctor would not diagnose her as disabled.  Plaintiff notes that nothing in the SPD states that "only a treating physician could substantiate [a] claim."

15.      Plaintiff does not dispute the records noted by Defendants.  Plaintiff disputes that her range of motion has anything to do with her dizziness and ability to sit for long periods of time.  Plaintiff notes that at the time of these progress notes, she was already on leave from work, as her date of injury/last date worked was February 6, 2003. *DAE at 315, 277, 323, and the top of every computer entry.*  Plaintiff does not dispute that Dr. Cheatum did not note any functional restrictions and limitations on those notes, but does dispute the contention that those notes are not evidence that Plaintiff could not work in a sedentary capacity.

16.      Plaintiff does not dispute that "restrictions and limitations" are not *per se* on Dr. Ogunro's notes.  Plaintiff does dispute that those notes indicate that she was able to work without restrictions, as Plaintiff was not currently able to work at the time.

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 16**

Plaintiff does not dispute that the notes indicate that she had experienced numbness and tingling for nine years. Plaintiff does dispute the "excerpt" of Dr. Ogunro's clinical evaluation as presented by Defendants to the extent it omits the finding that there was diminished sensation to the hand. *DAE at 156.* Further, the diagnosis was carpel tunnel syndrome and lupus. *DAE at 156.* Plaintiff disputes that Dr. Ogunro needed to place restrictions and limitations on Plaintiff's ability to work as she was already on leave. Plaintiff disputes that her pain was "alleged" as she both was given a diagnosis and prescription. *DAE at 156.*

17.   Plaintiff disputes the entirety of paragraph 17, as presented by Defendants. Plaintiff did subjectively report that she suffers from dizziness, or vertigo. Testing performed by Dr. Williams did not indicate that everything was "perfectly normal," and Defendants provide no pinpoint cite to the record to support this statement. The December 11, 2002, Progress Notes state that: "Certainly her underlying collage vascular history may well be the implied problem, but we will follow through with a vestibular package to assess her inner ear function." *PAE at 177.* Indeed, testing *via* MRI and vestibular testing "suggest[ed] that vestibular rehabilitation and remediation may be helpful to her." *DAE at 174.* The impression given in this report is that Plaintiff "has intermittent vertigo." *DAE at 174.* Dr. Williams noted on December 31, 2002, that Plaintiff's "testing involved some reproduction of her dizziness symptoms with warm stimulation on ENG." *DAE at 175.* Further, "the ENG showed vertical nystagmus, which frequently indicates central nervous system pathology." *DAE at 175.* Dr. Williams stated that "medications frequently do not help this problem." *DAE at 175.*

The Electronystagmogram Results Form stated: "The presence of vertical nystagmus indicate central nervous system pathology." *DAE at 178.*

18. Plaintiff does not dispute the facts as presented in paragraph 18.

19. Plaintiff does not dispute that she has been treated by Dr. Iqbal, for the first time on June 18, 2003. *DAE at 161.* However, Plaintiff does dispute the list of "subjective complaints" provided by Defendants in that it omits her diagnosis of vertigo. *DAE 161.* Plaintiff disputes the characterization of these complaints as "subjective" in that testing described above in paragraph 17 indicate objective medical data for her vertigo, or dizziness. *See par. 17 and the citations to the record therein.* Plaintiff does not dispute the next two sentences. Plaintiff does dispute the last sentence wherein Defendants ignore the evidence in Dr. Iqbal's Physical Exam of the Musculoskeletal system: "Patient walks with difficulty she uses the walls to support herself. Patient has 15/18 tender points for fibromyalgia. She has tenderness over bilateral costochondral, lower cervical, trapezius, supraspinatus, gluteal, anserine, right lateral epicondyles, and bilaterial occipital areas." *DAE at 165.* Plaintiff does not dispute that Dr. Iqbal did not list any restrictions or limitations in those notes. Plaintiff notes that the record is devoid of any attempts by Defendants to talk to Dr. Iqbal or submit a form requesting a listing of restrictions and limitations.

20. Plaintiff does not dispute that her claim was denied and that she received both a letter and telephone call advising her of that fact.

21. Plaintiff does not dispute that she appealed this decision and that she was given the opportunity to submit additional records, which she did *via* Dr. Williams' letter. Plaintiff disputes the characterization of Dr. Williams' letter as merely reiterating

Plaintiff's "subjective" complaints and Defendants' assertion that Dr. Williams provided no testing or records to support his statements. *See par. 17 above, and the full text of Dr. Williams' letter at par. 12 above.*  Plaintiff disputes this paragraph's conclusion that no evidence supported Plaintiff's complaints and that such objective medical data was required by the SPD, to the extent Defendants assert that.  Plaintiff has no basis upon which to determine what "convincing medical evidence" would be for Defendants. Plaintiff does not dispute that Defendants denied her claim again.

22.     Plaintiff does not dispute that Plaintiff was asked if she had additional medical evidence to support her claim and that *Plaintiff* did not have additional medical evidence to support her claim.  Plaintiff does not dispute that Defendants denied her claim a third time.  Plaintiff notes that the record is devoid of any further attempts by Defendants to obtain additional medical evidence, seek expert assistance, or interview her physicians.   Plaintiff notes again to the Court that Defendants have still not responded to Plaintiff's Interrogatories and Request for Production.

23.     Plaintiff does not dispute the reiteration of the discretionary authority in paragraph 23, which was presented by Defendants in paragraphs 4-6, subject to the particular areas Plaintiff disputed therein.

**D.     Response to:  Plaintiff's Lawsuit**

24.     Plaintiff does not dispute the facts as stated in paragraph 24, with regard to where and when she filed suit.  Plaintiff disputes the characterization that she "chose not to assert any claims under ERISA…" *See Plaintiff's Response to Defendants' Motion to Dismiss.*

**Plaintiff's Motion in Response**
**to Defendants' Motion for Summary Judgment – Page 19**

25.     Plaintiff does not dispute that Defendants' filed a Motion to Dismiss and that Plaintiff responded to it.  The Motion to Dismiss is still pending in this Honorable Court.   In her Response to Defendants' Motion to Dismiss, Plaintiff agreed that Defendant Holt should be dismissed from the lawsuit and that the Plan should be substituted as a defendant in this case in her place.  Plaintiff requested leave to amend her complaint in that Response, such request still pending before this Honorable Court. Plaintiff notes that in the SPD, CIGNA Life Insurance Company of New York, as the Claims Administrator, is listed as an Agent for Service of Legal Process.  *DAE 19.* Plaintiff also notes that she had no other contact information and the LINA is not listed in the SPD as a Claims Administrator or as an Agent for Service of Legal Process, even if Plaintiff had had the SPD.

**V.**

**<u>CONCLUSION</u>**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court DENY in part the Defendants' Motion for Summary Judgment on the above claims asserted by the Plaintiff.  Plaintiff requests that such other and further relief from the Court as the Court deems appropriate under the circumstances.

Respectfully submitted,

RICHARD G. DANNER, JR.
6440 N. Central Expressway, Suite 515
Dallas, Texas 75206
214/987-0066
214/987-1966 (Fax Number)
Texas Bar No. 05377000

ATTORNEY FOR PLAINTIFF

**Plaintiff's Motion in Response
to Defendants' Motion for Summary Judgment – Page 20**

## CERTIFICATE OF SERVICE

I hereby certify pursuant to Rule 5, Federal Rules of Civil Procedure, that a true and correct copy of the above and foregoing pleading was served on counsel for the Defendants *via* personal delivery on this 14th day of February, 2005.

_____
RICHARD G. DANNER, JR.

## TABLE OF CONTENTS

Table of Authorities     i

I.     INTRODUCTION     1

II.     SUMMARY OF RESPONSE AND STATEMENT OF FACTS     1

III.     ARGUMENT AND AUTHORITIES     1

    A.     The Summary Judgment Standard     1

    B.     The ERISA Standard     3

    C.     Response to: Plaintiff's State Law Claims Against Defendants Are Preempted by ERISA     5

    D.     Response to: The Only Proper Defendant in an Action to Recover Benefits Under ERISA Is the Plan Itself     5

    E.     Response to: Plaintiff's Claims Fail as a Matter of Law Because Defendants Abused their Discretion in Deny Plaintiff's Claim for ERISA Benefits     7

    F.     Limitation to the Administrative Record     10

IV.     CONCLUSION & PRAYER     12

## Table of Authorities

### A.   Table of Cases

***Supreme Court Cases***

*Black & Decker Disability Plan v. Nord,*
123 S.Ct. 1965, 155 L.Ed. 2d 1034 (2003)                                                    8

*Celotex v. Catrett,*
477 U.S. 317 (1986)                                                                        2, 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)                                  2

***Court of Appeals Cases***

*Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.,*
97 F.3d 822 (5th Cir. 1996)                                                                   3

*Boswell v. Reliance Standard Life Ins. Co.,*
38 Fed. Appx. 658 (5th Cir. 2003)                                                            3

*Curcio v. John Hancock Mutual Life Insurance Co.,*
33 F.3d 226 (3rd Cir. 1994)                                                                   6

*Duhon v. Texaco, Inc.,*
15 F.3d 1302 (5th Cir. 1994)                                                                  4

*Lain v. UNUM Life Ins. Co.*
279 F.3d 337 (5th Cir. 2002)                                                                3, 7

*Leonard v. Dixie Well Service & Supply, Inc.,*
828 F.2d 291, 294 (5th Cir. 1987)                                                            2

*Meditrust Financial Servs. Corp. v. The Sterling Chemicals, Inc.,*
168 F.3d 211 (5th Cir. 1999)                                                               3, 10

*Musmeci v. Schwegman Giant Super Markets,*
332 F.3d 339 (5th Cir. 2003)                                                                  6

*Salley v. E.I. du Pont de Nemours & Co.,*
966 F.2d 1011 (5th Cir. 1992)                                                                 3

i

*Skotak v. Tenneco Resins, Inc.*,
953 F.2d 909 (5th Cir.)                                                        2

*Stults v. Conoco, Inc.*,
76 F.3d 651 (5th Cir. 1996)                                                    2
*Sweatman v. Comm'l Union Insurance Co.*,
39 F.3d 594 (5th Cir. 1994)                                                    3

*Vega v. Nat'l Life Ins. Servs., Inc.*,
188 F.3d 287 (5th Cir. 1999)                                                 3, 4

*Wildbur v. ARCO Chemical Co.*,
974 F.2d 631 (5th Cir. 1992)                                                   4

**District Court Cases**

*Arnold v. F.A. Richard & Assoc., Inc.*,
2000 U.S. Dist. LEXIS 16541, 2000 WL 1693659 (E.D. La. 2000)         2, 4, 5, 8-9

*Mello v. Sara Lee Corporation*,
292 F.Supp. 2d 902 (N.D. Miss. 2003)                                           6

*Bowers v. UNUM Provident Corp. Bowers v. UNUM Provident Corp.*,
2002 U.S. Dist. LEXIS 275, 2002 WL 10467 (E.D. La. 2002)                       4

*Chapman v. The Prudential Life Ins. Co. of America*,
267 F. Supp.2d 569 (E.D. La. 2003)                                             2

*Woody v. Fortis Benefits Ins. Co.*,
2000 U.S. Dist. LEXIS 2592, 2000 WL 245858 (E.D. La. 2000)                   2, 4

**B.    Statutes**

29 U.S.C. § 1132(a)(1)(B)                                                       3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAWANA L. BENNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 304 CV 1281-B |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, d/b/a CIGNA | § | |
| GROUP INSURANCE and | § | |
| PATTI HOLT, | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S
BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT

## I.     INTRODUCTION

COMES NOW, Tawana Bennett ("Bennett" or "Plaintiff"), Plaintiff in the above numbered and styled cause, and files this Brief in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment.

## II.     SUMMARY OF RESPONSE AND STATEMENT OF FACTS

Plaintiff summarized her response and responded to Defendants' defective Statement of Facts in her Response to Defendants' Motion for Summary Judgment and incorporates it for all intents and purposes as if fully set forth herein.

## III.     ARGUMENTS AND AUTHORITIES

### A.     The Summary Judgment Standard

Plaintiff will respond to Defendants' argument, but it is important to note first the summary judgment standard and how it applies under the facts of this case:

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 1**

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L.Ed. 2d 265, 106 S. Ct. 2548 (1986)), cert. denied 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56 (c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (emphasis supplied) (other citation omitted).

*Arnold v. F.A. Richard & Assoc., Inc.,* 2000 U.S. Dist. LEXIS 16541, [*6-*7], 2000 WL 1693659 (E.D. La. 2000).

It has been held that: "To meet this standard, the moving party must present more than 'mere allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law.'" *Woody v. Fortis Benefits Ins. Co., 2000* U.S. Dist. LEXIS 2592, [*16], 2000 WL 245858 (E.D. La. 2000) (citation omitted.) Moreover, "[t]he inferences drawn from the underlying facts…must be viewed in a light most favorable to the nonmoving party." *Id.*

In this case, Defendants' frequently fail to cite to the record and demonstrate a lack of genuine issue of material fact in order for this Court to decide in their favor. However, even though Defendants have failed to carry their burden, Plaintiff will show that there are material facts showing that there are genuine issues for trial. As stated by the court in *Chapman v. The Prudential Life Ins. Co. of America*: "'The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed.'" 267 F. Supp.2d 569, 575 (E.D. La. 2003) quoting *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

**Plaintiff's Response to Defendants'
Motion for Summary Judgment – Page 2**

As long held: "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Meditrust Financial Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). As the review of the evidence in this case will show, there is no genuine issue of material fact regarding Plaintiff's disability: Plaintiff was disabled, the evidence shows it, and the evidence shows that Defendant was arbitrary and capricious in not seeking to gather evidence of Plaintiff's disability, ignoring the evidence it did gather, and denying Plaintiff's claim three times.

**B.      The ERISA Standard**

"The Employee Retirement Income Security Act of 1974 ("ERISA") authorizes federal court review of a plan administrator's denial of a claimant's claim." *Boswell v. Reliance Standard Life Ins. Co.*, 83 Fed. Appx. 658, 660 (5th Cir. 2003) citing 29 U.S.C. § 1132(a)(1)(B). That being said, Plaintiff does not dispute the abuse of discretion standard that Defendants' say is the proper standard of review in this case. *Lain v. UNUM Life Ins. Co.* set forth the standard very clearly:

> [F]actual determinations during the course of...benefit proceeding[s] are reviewed for abuse of discretion. When applying the abuse of discretion standard, we "analyze whether the plan administrator acted arbitrarily and capriciously." *Sweatman v. Comm'l Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994) (quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)). A decision is arbitrary when made "***without a rational connection*** between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996). (Emphasis added.) An administrator's decision to deny benefits must be "based on evidence, ***even if disputable***, that clearly supports the basis for its denial." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). (Emphasis added.) We must find that "without some ***concrete evidence*** in the administrative record that supports the denial of the claim,...the

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 3**

administrator abused its discretion." *Vega,* 188 F.3d at 302. (Emphasis in original.)

279 F.3d 337, 342 (5th Cir. 2002).

It warrants noting that the Defendants in this case are operating under a conflict of interest that must be considered when determining whether CIGNA abused its discretion in making its factual determination denying Plaintiff's claim.[1]  Essentially, we have a claims administrator who is also the insurer.

> However, the existence of a conflict of interest is a factor to be considered in determining whether the plan administrator abused its discretion in denying a claim under the ERISA plan. See *Vega v. National Life Ins. Services, Inc.* 188 F.3d 287, 295 (5th Cir. 1999) (en banc). A conflict exists when the administrator "both insures and administers the plan," because it is "self interested, i.e., the administrator potentially benefits from every denied claim." *Id.* The Fifth Circuit held in *Vega* that a District Court should review an administrator's denial of a claim under a sliding scale standard: the greater the evidence of conflict on the part of the administrator, the less deferential the Court's abuse of discretion standard. *See* 188 F.3d at 299. The *Vega en banc* panel determined that a wholly-owned subsidiary was self-interested to "some degree" less so than if an

---

[1]  As an aside, Plaintiff notes here that case law has indicated that judges would appreciate seeing evidence of the exact extent of the conflict of interest. Plaintiff notes that her discovery requests were not answered by Defendants. *Bowers v. UNUM Provident Corp.,* 2002 U.S. Dist. LEXIS 275, 2002 WL 10467 (E.D. La. 2002) referencing *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1309, n. 6 (5th Cir. 1994) (criticizing Plaintiff for failing to provide the court with evidence "of Provident's financial arrangements that would illuminate the nature of the alleged conflict.")  Plaintiff requested this information in its Interrogatories 3 through 5. *PAE 451-452.* If Defendants' argument was that the evidence is limited to the administrative record and that that justified their ignoring of Plaintiff's requests, this demonstrates, however, that discovery *is* permitted outside the Administrative Record for certain purposes.  The court would not ask a Plaintiff for information to support a Motion for Summary Judgment and then not allow the discovery that would produce that evidence. *See also, Arnold v. F.A Richard & Assoc., Inc.,* 2000 U.S. Dist. LEXIS 16541, [*12-*13], [*16-*17], 2000 WL 1693659 (E.D. La. 2000) (noting that Canada Life, as both claims administrator and insurer operated under a conflict of interest warranting a less deferential review and finding that "Because there are disputed issues that are sufficient to deny Canada Life's motion for summary judgment, and because it would be *unreasonable* to require Arnold to attempt to prove bad faith, inconsistent plan interpretation, and conflict of interest without allowing Arnold the opportunity to develop evidence to support those claims, Canada Life must respond to all discovery requests that are not otherwise privileged.") (Emphasis added.); *Woody v. Fortis Benefits Ins. Co.,* 2000 U.S. Dist. LEXIS 2592, [*13-*15], 2000 WL 245858 (E.D. La. 2000) relying, in part, on *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 638 (5th Cir. 1992) ("reviewing courts may review evidence that was not presented to the administrator when evaluating questions of self-interest and good faith under an abuse of discretion standard...[and] when reviewing plan interpretations *de novo*...evidence of self-interest is relevant to determining the appropriate amount of deference under the Fifth Circuit's sliding scale approach.")

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 4**

insurer and administrator operated within the same entity, and so, that panel reviewed the administrator's decision with "only a modicum less deference." *Id.* at 301. However, when faced with such a conflicted, single-entity administrator and insurer, that *en banc* panel stated that it would be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision," and that it would "expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.*

*Arnold*, 2000 U.S. Dist. LEXIS at [*11-*12].

In this case, CIGNA insures this plan and, as the claims administrator, makes the initial claims determination and the final appeals determination. Thus, it has a conflict of interest in that it is in CIGNA's best financial interest to deny claims. Further, when one looks to the absence of concrete evidence supporting its denial of Plaintiff's claim despite the record, as little deference as possible under Fifth Circuit law should be given to CIGNA.

C.    **Response to: Plaintiff's State Law Claims Against Defendants Are Preempted by ERISA.**

Plaintiff concedes that state law claims are preempted by ERISA and incorporates the discussion in this regard from her Response to Defendants' Motion to Dismiss still pending before this Honorable Court.

D.    **Response to: The Only Proper Defendant in an Action to Recover Benefits Under ERISA Is the Plan Itself**

Plaintiff again incorporates the discussion in this regard from her Response to Defendants' Motion to Dismiss still pending before this Honorable Court. Plaintiff reiterates that in both their Motion to Dismiss and their Motion for Summary Judgment, Defendants admit there is a split in authority on this issue and that the Fifth Circuit has yet to rule definitively on it. Plaintiff reasserts the authority relied upon in the Third

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 5**

Circuit, *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 233 (3rd Cir. 1994) which held that an entity other than the plan may be a proper defendant in a lawsuit to recover benefits if that entity has sufficient discretionary authority and responsibility under the plan.  In this case, Plaintiff sued Life Insurance Co. of North America, d/b/a CIGNA Group Insurance.  All correspondence was with CIGNA, who denied Plaintiff her benefits, has repeatedly asserted its authority under the language of the SPD, and is listed as the Agent for Service of Legal Process in the SPD. *DAE at 19.*

The Plan has traditionally been the proper party where *the Plan* had the discretionary authority to make decisions.  In this case, however, CIGNA has insured benefits under the plan and *CIGNA* has the discretionary authority rather than the Plan. Since discretionary authority is with CIGNA, *CIGNA* is the proper party rather than the Plan, which were the Plan joined in the lawsuit, it would then assert that all discretionary decisions had been made by CIGNA rather than the Plan.   *Mello v. Sara Lee Corporation,* 292 F.Supp. 2d 902, 906 (N.D. Miss. 2003) *relying upon Musmeci v. Schwegman Giant Super Markets,* 332 F.3d 339, 349-560 (5th Cir. 2003) ("holding that the corporation/employer in that case as the plan administrator and plan sponsor could not reasonably be separated from that of the plan with the same name.")  CIGNA is too inextricably intertwined in this case to say it is not a proper party – it had all of the discretionary authority, made the final decisions, insured the plan, and was the proper party to be served according to the SPD.

In the cases where courts have held that the Plan was a proper party were self-funded plans where benefits would be paid from the plan.  However, where the funding is provided through insurance the need to have the Plan as a proper party is non-existent

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 6**

since the assets of the insurance carrier, and not the Plan, will be the source of benefit payments.

**E.      Response to:  Plaintiff's Claims Fail as a Matter of Law Because Defendants Abused their Discretion in Denying Plaintiff's Claim for ERISA Benefits**

Plaintiff listed in the statement of facts evidence demonstrating that she has medically verifiable vertigo, which causes her such dizziness she is unable to drive or work. *See Resp. Motion at par. 12, 14, and 17.*  Plaintiff also established a history of her lupus, a condition known to get progressively worse.  *See Resp. Motion at 12; PAE 0021-0033, 0107-0111.*  Defendants stated in their denial letters and other correspondence that: "you must demonstrate, based on medical evidence and other clinical findings that your medical restrictions and limitations are severe enough to preclude you from performing the essential duties of your occupation." *PAE 143.*  However, this is NOT what the SPD requires and case law from this Fifth Circuit has squarely rejected this reasoning.

The *Lain v. UNUM Life Ins. Co.* court criticized the insurance company in that case, UNUM, for denying a claim on this basis:  "It also failed to take into account that Lain's chest pains cannot be measured by tests.  To focus on the tests, rather than the pain and its effect, further indicates UNUM's abuse of discretion."  279 F.3d 337, 347 (5th Cir. 2002).  This was the case when CIGNA reviewed Plaintiff's claim – it consistently discounted the reports of pain, weakness and dizziness and the compromising effect it would have on doing any task, let alone her own occupation.

*Lain* is further instructive, "an administrator's decision to deny benefits must be based on evidence, ***even if disputable***, that clearly supports the basis for its denial." *Id.* at 342. (Emphasis added.)   Here there is evidence that while Plaintiff had for some time been able to perform her own occupation, her pain, dizziness, and weakness increased to

**Plaintiff's Response to Defendants'
Motion for Summary Judgment – Page 7**

such an extent that she could no longer even sit for a long enough period of time to work.

Dr. Williams stated this in his letter, his oft-misquoted, and at times, seemingly purposely

misunderstood, letter:

> Dear Ms. Del Grosso:
>
> This letter is being written support [sic] of the above-mentioned patient who I have seen and evaluated for dizziness of uncertain etiology. Her testing and evaluations have pointed toward a central nervous system disease and not peripheral end-organ disease as the etiology for her balance complaint. ***The patient is not able to work or drive consistently or sit for long periods of time without getting extremely vertiginous.*** She certainly is not having nausea or vomiting on a regular basis.
>
> Prognostically, I cannot predict how this problem will play out other than ***because of her underlying collagen vascular disease, <u>lupus</u>, she may have issues with dizziness indefinitely.***
>
> I have no further recommendations from an otolaryngological standpoint and would support her wish for long-term disability.
>
> Sincerely,
>
> JR Williams, II, MD, FACS

*DAE at 139. (Emphasis added.)*

In *Black & Decker Disability Plan v. Nord*, 123 S.Ct. 1965, 1972, 155 L.Ed. 2d

1034 (2003), the Court held: "Plan administrators, of course, may not arbitrarily refuse

to credit a claimant's reliable evidence, including the opinions of a treating physician."

Thus, again, like *Lain*, courts have held that opinions of treating physicians and self-

reports of pain and symptoms that do not easily lend themselves to objective testing, are

not to be discounted.

Defendants state over and over again that Plaintiff ought to be able to do a

sedentary job. However, her doctor says she cannot. Her doctor, who is fully cognizant

of her lupus, physical weaknesses, and vertigo. In a somewhat analogous case, *Arnold v.*

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 8**

*F.A. Richard & Assoc., Inc.*, the court noted and chastised an insurance company's nurse who "selectively omitted" evidence pointing toward a disability and who chose "instead to rely on [the claimant's] supervisor's suspicions that the disability was fraudulent." 2000 U.S. Dist. LEXIS 16541, [*13], 2000 WL 1693659 (E.D. La. 2000).

Moreover, time and again, in its correspondence and in its argumentative recitation of the facts, CIGNA states that *Plaintiff* did not provide them with the proper medical documentation to support her claim.  First, she did, to the extent she had it.  Second, as noted in the facts at paragraph 10, as the Claims Administrator with the fiduciary and discretionary authority to determine the facts of a case, CIGNA was the one who was to obtain information.  CIGNA produced in its appendix at least 7 copies of the Authorization form that Plaintiff executed authorizing her doctors to release information to CIGNA.  Though there were times that it appeared CIGNA needed clarification, such as who told Plaintiff to stop working, CIGNA called Plaintiff and not her physicians.  *See Resp. Motion at p. 13.*  Yet, under the terms of that Medical Release, CIGNA could have contacted her doctors for additional information.  CIGNA also could have, under the terms of the SPD, had Plaintiff submit to an independent medical examination.  *DAE at 17.*

Further, the first denial letter stated:  "in cases where a chronic long standing condition or conditions are involved we must be provided with medical evidence to conclusively support the existence of a disabling process."  *DAE 145-146.*   Again, there is nothing of the kind in either the SPD or the policy.  Moreover, the diagnosis of lupus, had CIGNA really wanted to investigate this claim properly, would have clued them in that lupus is, by nature, a disease that gets progressively worse. *PAE at 0118.*  Plaintiff

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 9**

would have told them this, had they asked and states that now in her affidavit.  *PAE at 0118.*

One final note on this point is that CIGNA several times in its Statement of Facts notes that none of Plaintiff's doctors listed any "restrictions and limitations" on her charts.  First, that is not commonly the manner in which doctors keep their records, as evidenced by the fact that none of them did so in this case.   Second, if CIGNA had wanted to obtain that information, it could have simply sent a form or picked up the phone and asked the doctors directly, "In light of Plaintiff's vertigo and lupus; can she sit at her desk eight hours a day; can she answer the telephone and interact with customers; can she complete the other tasks required of her job?"  CIGNA did not do so.  Prior to the denial of her claim, Plaintiff was not made aware that CIGNA needed specifically a list of "restrictions and limitations" from her doctors.  As far as she was concerned, the nature of her severe illness, *e.g.,* lupus, the details of which can be easily determined by consulting medical journals or calling her doctors, spoke for itself.

Defendants did a sloppy job of analyzing and reviewing Plaintiff's claim and are now trying to put that blame on her.  She submitted all the documents *she* had and then gave CIGNA the authorization it needed to gather the additional documents it may have needed.  The evidence indicates that CIGNA was arbitrary and capricious in denying Plaintiff's claim each time.  At the very least, given the evidence, there are genuine issues of material fact as to Plaintiff's conditions and her ability to do her job in light of them, which precludes granting Defendants' Motion for Summary Judgment on this basis.[2]

---

[2] As Defendants cite in their Motion, *Meditrust Financial Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (a decision is arbitrary only if made without a rational connection between the known facts and the decision).  Holding Defendants to this standard warrants denying their Motion for Summary Judgment.

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 10**

**F.**    **Limitation to the Administrative Record**

Defendants have apparently anticipated an argument by Plaintiff by preemptively bringing up this issue. Plaintiff has supplemented the record simply to demonstrate that CIGNA did not do all it could to investigate her claim. For example, Plaintiff's affidavit provides information about how her illness has progressed and when her illness progressed to the point she could no longer work as she had done before. *PAE at 0117-0118.* There are also additional medical records from the same doctors from whom Defendants were supposed to be obtaining records which did not make it into Defendants' Appendix of Evidence. *PAE at 0034-0106.* See for example, the notes from Dr. Cheatum indicating a change in Plaintiff's joints. *PAE 0037.* Defendant has argued that Plaintiff has shown no changes in her condition. Further, Plaintiff has printed off the Internet various articles about the nature of lupus to demonstrate that some of the "objective" data that Defendants say they were lacking that justified their arbitrary and capricious denial of her claim was literally a mouse-click away from obtaining. *PAE 0021-0033, 0107-0111.*

Finally, Defendants made a big deal out of the fact that they were never told of Plaintiff's SSDI reconsideration status. Plaintiff addressed how this was not true in paragraph 9 of the Statement of Facts in Plaintiff's Motion. Defendants bring up this issue as if it would have changed their determination of Plaintiff's claim had they known her SSDI claim was pending in an appeal. Well, the evidence is they knew that it was. In Plaintiff's Appendix the Court will find the "Fully Favorable" determination that came

---

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 11**

shortly after CIGNA denied Plaintiff's claim for a third time.[3] *PAE at 0003-0010.* Thus, if the status of Plaintiff's SSDI reconsideration was so vitally important, CIGNA could have delayed its determination. As the Court will notice, the Fully Favorable Decision finds Plaintiff to be disabled, unable to perform her sedentary job, and credible. *PAE at 0008-0010.*

Thus, the evidence is not presented necessarily for the Court to consider in determining whether Plaintiff is disabled or not, but to show how CIGNA really did not do its job and made a results-oriented "investigation."

### IV.   CONCLUSION & PRAYER

For all these reasons, Defendants' Motion for Summary Judgment should be partially denied.

Respectfully submitted,

RICHARD G. DANNER, JR.
6440 N. Central Expressway, Suite 515
Dallas, Texas 75206
214/987-0066
214/987-1966 (Fax Number)
Texas Bar No. 05377000

ATTORNEY FOR PLAINTIFF

---

[3] The Court will no doubt notice that the date stamped on the Fully Favorable Decision is February 27, 2003. This no doubt a clerical error as the Introduction to the Decision notes that the appeal hearing was held on January 15, 2004. *PAE at 0007.* Thus, the correct date on the Decision must be February 27, 2004, which follows on the heals of the final decision, the third decision, to deny Plaintiff's claim by CIGNA, which came in a letter dated January 21, 2004. *DAE at 74.*

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 12**

## CERTIFICATE OF SERVICE

I hereby certify pursuant to Rule 5, Federal Rules of Civil Procedure, that a true

and correct copy of the above and foregoing pleading was served on counsel for the

Defendants *via* personal delivery on this 14th day of February, 2005.

RICHARD G. DANNER, JR.

**Plaintiff's Response to Defendants'**
**Motion for Summary Judgment – Page 13**